ANDERSON, Circuit Judge,
dissenting.
The majority opinion holds that the district court correctly found that Esther had met her burden to prove entitlement to the spousal testimony privilege. Because I believe that the majority fails to actually put Esther to that burden, fails to acknowledge that the district court crippled the government in its effort to counter that burden by refusing to permit the government to cross-examine Esther, and minimizes the significance of Jarvison’s lengthy relationship with Esther’s daughter, I respectfully dissent.
The majority acknowledges that the person seeking to assert an evidentiary privilege bears the burden of establishing its applicability. Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir.1995). However, the sum total of the relevant testimony presented by Esther, the person invoking the spousal testimony privilege in the face of the government’s motion to compel that testimony, was as follows:
THE COURT: Okay. When were you married?
THE WITNESS: June 25 — where?
THE COURT: No. When?
THE WITNESS: June 25,1953.
THE COURT: Okay. And where were you married?
THE WITNESS: Coyote Canyon.
THE COURT: Is that on the Navajo Reservation?
THE WITNESS: Navajo Reservation.
THE COURT: By whom were you married?
THE WITNESS: Oh, a person, John Venson.
THE COURT: Is he a Navajo medicine man?
THE WITNESS: Yes.
THE COURT: Okay. Is that a traditional marriage under Navajo law?
THE WITNESS: Yes.
Appellant’s App. at 87-90. The court then declared “Okay. That’s good enough for me.” Id. at 90. When the government sought to cross-examine Esther, the court responded, “No, I’ve heard enough. I’m not going to intrude any further on her marriage.” Id. The one witness the government was permitted to introduce was unable to confirm the Navajo Tribe’s view of the existence and validity of the purported marriage of Esther and Jarvison, although the district court essentially disregarded the witness’s view in any event:
[ I]t doesn’t make any difference, in my judgment, under this kind of procedure whether the tribe thinks they’re married or not. If they think they are married, and they thought they were married by a tribal medicine man, and nobody made *1233 a record of it, that doesn’t mean that they’re not married.
Id. at 95.
Thus, the district court held that Esther had carried her burden of proving entitlement to the spousal privilege because she simply stated she had been married in a Navajo traditional ceremony, although no documentary evidence clearly supported the existence and validity of that marriage. The majority attempts to bolster Esther’s otherwise bare-bones testimony by claiming that the evidence need only show “substantial” compliance with the requirements under the Navajo Code for a valid traditional marriage. But Esther’s testimony hardly shows even a substantial compliance — all she stated was that she had been married by a man she said was a Navajo medicine man and that she believed it was a traditional ceremony. Not a shred of evidence was presented with respect to the remaining requirements of Navajo Code, tit. 9, § 3 for establishing the performance of a traditional Navajo wedding ceremony.
Furthermore, the district court severely handicapped the government in its effort to rebut her assertion of the existence of a valid marriage when it refused to let the government cross-examine Esther. The majority concedes that “the district court should have allowed the Government to cross-examine Esther on her claim of marriage” but then states that “its failure to do so must be evaluated for prejudice after considering the totality of the evidence presented on the marriage.” Maj. Op. at 1224, n. 2. While the majority notes that the government was afforded the opportunity to present a witness whose testimony was, quite simply, inconclusive on whether there was a valid marriage between Esther and Jarvison, and to present a proffer of what they believed Esther’s testimony would establish, the government was not afforded the opportunity to test Esther’s credibility. Since the district court had already put everyone on notice that Esther’s testimony would be crucial, it was clearly prejudicial to prohibit the government from cross-examining her in order to probe her credibility.
Finally, I disagree with the majority’s conclusion that the totality of the evidence presented concerning the existence of a valid marriage suffices to establish that the marriage existed. The majority summarily dismisses the fact that, after cohabiting with Esther for some twelve years, Jarvison then left Esther, began cohabiting with Esther’s daughter from a previous marriage, and had four children with the daughter over a fifteen-year span of cohabitation. Esther and , Jarvison’s “reunion” following that lengthy relationship between Jarvison arid Esther’s daughter has been sporadic, at best. The majority concludes that “the lack of a divorce ending the original 1953 marriage defeats th[e] argument” that the relationship with Esther’s daughter constituted a common-law marriage which extinguished any prior marriage. Maj. Op. at 20. This could lead to absurd results — an allegedly valid marriage of short duration could be followed by a thirty-year common law marriage, yet the spouse from the first marriage could claim a spousal testimonial privilege while the common-law spouse from the second relationship could not. The majority is willing to overlook the need for formalities, records, and documents when it comes to determining the creation of a marriage but strictly enforces such requirements when it comes to terminating a marriage. That fails to take account of the realities of this case. I therefore respectfully dissent.